**GNAT, Plaintiff-Appellee, v. PACKARD ELECTRIC DIVISION
GENERAL MOTORS CORP., Defendant-Appellant.**

Ohio Appeals, Seventh District, Trumbull County.

No. 1185.   Decided 1949.

W. W. Pierson, Warren, C. J. Wardlaw, Columbus, for plaintiff-appellee.

Henry M. Hogan, E. H. Reynolds, Detroit, Michigan, Wm. J. Higley, Toledo, for defendant-appellant.

### OPINION

By PHILLIPS, J.

Defendant, a corporation authorized to do business in Ohio, and by its own election a "self-insurer" under the Workmen's Compensation Law of Ohio, and authorized by the In-

dustrial Commission thereof "to pay workmen's compensation claims directly to its injured employees at all times mentioned" in plaintiff's petition filed in the court of common pleas, appealed to us on questions of law from a judgment of that court entered upon a unanimous verdict of a jury finding plaintiff entitled to participate in the Workmen's Compensation Fund of Ohio on her appeal thereto under the provisions of §1465-90 GC, from an order of the Industrial Commission of Ohio, made upon hearing of her duly filed application for rehearing, denying her the right of such participation in that fund on the ground that "claimant's disability, to-wit, fibrocystic degeneration of left breast with small abscess was not the result of an injury sustained in the course of and arising out of employment".

Plaintiff, a long time employee of defendant corporation, alleged in her petition filed in the court of common pleas and testified that "on or about February 21, 1945, while in the course of said employment assembling electric wire, a tool, called a stripper, which she was using, pinched her left breast near the nipple causing the development of an abscess and removal of the breast by surgical amputation as a result of which she was disabled for several months".

Briefly, but substantially, plaintiff further testified that before February 21, 1945, she never had any lump or abscessed condition on either breast; that the pinching of her left breast on this occasion was more painful, "I have pinched myself before but it was not such a hard pain, this pain just made me weak"; that she had pinched the left breast before but never had pinched the left nipple; that after she pinched her breast she went to the rest room to see if there was any cut and to the nurse to see if there was anything she could do; that the only sign of injury was where it was red at the point of the nipple and at the bottom for an area about the size of "a nickle"; that two weeks later she noticed that the spot was becoming more painful and there was a lump like a boil; that she made no report of the pinching on the date in question to her foreman or floorlady, and never talked to anyone in authority at the plant about her condition except one of the company's officials, its nurse, and the company physician, whom she consulted the latter part of March and whom she told of such soreness and abscess.

In a signed statement of claim made by plaintiff to the Metropolitan Life Insurance Company for benefits under a group insurance policy it was stated that her disability was not the result of the accident, and her condition was not due to accident. On cross-examination plaintiff testified the

answers to such questions were not in her writing, and when she last saw the statement those questions, which she never answered, remained unanswered thereon, "I didn't fill it in, I did not write that".

The surgeon who removed plaintiff's breast and first saw her on or about April 25, 1945, at his office, testified that "before it was pinched such breast was in a perfectly normal condition", and that when the breast was pinched many of the ducts were crushed and some of the acini thereof were injured, and that the trauma formed an abscess therein; that such breast had been developing this fibrocystic disease before it was pinched; that "there had been a condition of the breast before such pinching" for the reason "well the fact that the breast contained a large amount of fibrosis other than just in the area where it was injured at the nipple, the diagnosis was fibrocystic condition of the breast", "we know the condition does not develop to that extent in a period of four months"; that the condition of the left breast was due to trauma sustained at the time of such pinching, and that such pinching would aggravate that condition; that "the exact edology I don't believe it is known, and that the edology of the abscess was due to the fact that the breast had been pinched"; and that his final diagnosis was "fibrocostic disease of the breast with small abscess" (sic).

One of plaintiff's witnesses testified that she saw plaintiff's left breast before she consulted the surgeon who amputated it, and that there was an area just below the nipple "no bigger than a dime" which was "pink and bruisy looking".

Plaintiff's mother testified that after plaintiff went to sleep on the night of the day she was allegedly injured on February 21, 1945, "I open pajamas, I see little blue on bottom nipple—after inside, little bit, little no lots"; that two weeks later she saw the breast again and at the same spot "I see little big one some swell coming from—coming some stuff, no much little, that's all I can tell you".

Plaintiff's case history at St. Joseph Hospital revealed that while the record indicated that plaintiff said when she entered the hospital on April 28, 1945, that she was injured "three months ago", that it bore a notation "by patient" 4-20-45 indicating some person's error, which presented a question for the determination of the jury as to which of the conflicting statements in the record was correct; that plaintiff's surgeon was unable to say whether the abscess in plaintiff's breast could or could not have resulted regardless of trauma, that "I can't say it did, and I can't say it didn't".

Defendant's company surgeon, who first saw and examined plaintiff on March 20, 1945, in the medical department of defendant company "found nothing wrong" with her and found no external evidence of injury thereto, but observed "a mass in the breast", and advised her to bathe her left breast in a solution of boric acid and epsom salts, testified that there was no causal relation between the alleged injury and the later condition of plaintiff's breast because there was no evidence of such condition present at the time of his examination on that date, at which time there was no evidence of fibrocystic disease thereof.

A pathologist, testifying for defendant as an expert witness, said that fibrocystic disease is "a disease affecting the breast of both male and female, the cause of which is not determined, and which is manifested by typical clinical and pathological changes. It is a disease which is not a true tumor, its origins are obscure, but it is probably * * * based on disturbances in the ovarian functions and other glands of internal secretion affecting the development and function of the female genitalia, as well as the male organ of the secondary sex characteristics". In answer to a hypothetical question he stated in substance that there was no causal relationship between the pinching of plaintiff's breast and the condition causing removal thereof as alleged.

In its first assigned ground of error defendant complains that the judge of the court of common pleas erred in permitting plaintiff to introduce evidence over its objection of a pre-existing condition of her breast which was aggravated by the specific pinching of which she complains when she did not allege aggravation in her petition, and permitted plaintiff to testify that she had no lump or abscessed condition in her beast prior to the 21st day of February, 1945, and never had any pain therein prior to that time; and her physician to testify that he was able to determine what was probably the condition of the breast and injury and that his opinion was that the condition of the breast "had been developing this fibrocystic disease before the breast was pinched", that "yes I think it (pinching) would aggravate the (previous) condition of her breast."

It is plaintiff's contention with reference to this assigned ground of error that "if the breast was previously fibrocystic the diseased tissue with low resistance would be more readily affected by such trauma, which might either aggravate the previous condition or produce a new abscessed condition. Under the petition as written either result or both might be proven as a proper basis for workmen's compensation. It

was not necessary to allege aggravation of a former disease, under these circumstances, in order to offer proof thereof"; and that "since there is abundant proof that the injury was the direct and proximate cause of the abscess independent of any aggravation of the fibrocystic condition the jury may very well have based its verdict upon that proof alone", and since "the defendant did not test the verdict by interrogatories on this point" that "even if there was error as defendant claims it was not prejudicial or reversible error under the 'two-issue rule' ".

Upon careful consideration of the entire record of the proceedings had before the Industrial Commission and in the court of common pleas submitted to us for review, and in the state of the pleadings in the case from which this appeal is taken, we cannot arrive at the conclusion which defendant urges us to reach that the trial judge erred to its prejudice in permitting the introduction of the testimony of which defendant complains in this assigned ground of error.

While we recognize that "unless and until it is shown that the diseased condition existed at the time of injury, all testimony tendered for the purpose of showing acceleration of a diseased condition is incompetent and should be excluded" **(Dewers v. Industrial Commission, 32 Abs 495)**, we also remember that there is evidence that the alleged trauma to plaintiff's left breast was the direct and proximate cause of the condition which developed therein necessitating the removal thereof independent of any acceleration or aggravation of any existing diseased conditioned thereof.

Since the verdict of the jury was not tested by interrogatories we can not determine whether the jury found the condition of plaintiff's breast necessitating amputation thereof was the result of trauma received on February 21, 1945, or whether such injury aggravated a pre-existing condition not pleaded.

So that even though the trial judge did err in the admission of the evidence of which complaint is made in the state of the record we can not say that if he did err such error constituted error prejudicial to defendant as claimed.

We do not believe that "the judgment is not sustained by sufficient evidence and is contrary to law", and "realizing that upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in its favor", and that "if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that

conclusion is adverse to such party the judge should direct a verdict against him" (**Hamden Lodge No. 517, Independent Order of Odd Fellows, et al, v. The Ohio Fuel Gas Co., 127 Oh St 469**), we can not say from such record, which contains evidence offered by each party which contradicts other evidence offered by each of them and each offered evidence in direct conflict with that offered by the other, the "court erred in refusing a judgment in favor of defendant notwithstanding the verdict" as we believe from the evidence contained in the record reasonable minds could reach different conclusions on the issues presented by the pleadings and the evidence in the case from which this appeal was taken.

The judgment of the court of common pleas is affirmed.

CARTER, PJ, NICHOLS, J, concur in judgment.